John W. Hess v. C. S. Lucas, Appellant.

**Evidence.** A writing which forms part of the history of the case
1   and indicates the relative interests of the parties in the sub-
    ject-matter of the suit is admissible in evidence.

**Evidence: letters.** In an action on an oral contract for one-half
2   the sum recovered in a previous suit, a letter of defendant
    offering to sell his interest in the case because of lack of funds
    to pay expenses, is admissible on the issue as to who was to
    pay the costs; and one impliedly admitting the duty of set-
    tling with plaintiff is also held admissible.

**Evidence Stricken Out.** Evidence which has been stricken from
3   the record cannot be said to be before the jury so as to raise
    the question of its admissibility.

**Instructions: when not prejudicial.** An instruction relating to
4   an issue not raised by the pleadings or evidence, and refusal
    to submit a requested instruction, though proper, do not con-
    stitute prejudicial error, where the jury finds in accordance
    with the contention of the party complaining of the instruction.

**Instructions.** Where the pleadings and proof of plaintiff show that
5   parties jointly interested in a judgment agreed to bring the
    suit, divide the expenses, and share the net recovery, an in-
    struction in an action on the agreement that the expenses were
    to be deducted from the amount of the recovery and the bal-
    ance divided between them, was warranted.

*Appeal from Johnson District Court.*—Hon. M. J. Wade,
Judge.

Monday, February 1, 1904.

Action on oral contract, to recover one-half net amount
obtained from a railroad company for damages to a stallion.
Verdict for plaintiff, upon which judgment was entered.
The defendant appeals.—*Affirmed.*

*Baker & Ball* for appellant.

*Ranck & Bradley* for appellee.

Ladd, J.—In 1896 the defendant, Lucas, was owner of a
pedigreed stallion known as "Larry Ginter," and on the 16th

of December, that year, entered into a contract with plaintiff, Hess, by the terms of which the latter agreed to ship the horse to one Fuller to be trained, and, if the horse should develop into a "fast and consistent performer," to be campaigned "during the racing season of 1897 so long as said horse remains in racing condition." Plaintiff was to advance all expenses, and the money, if any, won at the races, was to be first applied thereon, and the balance, if any, remaining, was to be equally divided. On April 27, 1897, the contract was extended until November 1, 1898. In shipping the horse from Iowa City to Cedar Rapids, over the Burlington, Cedar Rapids & Northern Railway, October 4, 1898, it was injured, and, in a subsequent action against the company, the sum of $1,800 recovered as damages. *Lucas v. Ry. Co.*, 112 Iowa, 594. To recover a portion of this judgment paid to defendant, and the value of some articles alleged to have been converted to his own use by defendant, is the object of this action. The plaintiff contends that immediately after the injury he entered into an arrangement with defendant, by which suit against the railroad company was to be brought; that each should pay one-half the costs and expenses, along as necessary in the prosecution; and that these should be deducted from the amount recovered, and the net proceeds equally divided. On the other hand, defendant insists that Hess agreed to pay all costs and expenses, including attorney's fees, and, as a consideration, was to receive one-half the amount recovered; that he failed and refused to do so, though repeatedly requested; and that, by reason of such failure, he forfeited and repudiated the contract, and ought not to recover.

I. The contracts first mentioned were received in evidence over the defendant's objections. We think they were admissible as a part of the history of the case, and as indicating the relative interests of the parties in the horse at the time it was injured. The plaintiff was then bailee of the horse, and was entitled to its possession until November 1, 1898, although not required, under

I. EVIDENCE.

the terms of the contract to make advances of expenses inci-
dent to its training when not in "racing condition." That he
might have maintained an action for the loss of its use
occasioned by the accident seems hardly open to question.
This being true, their respective interests in the animal were
proper matter of proof, as bearing upon the controversy un-
der investigation.

II. Exception is also taken to the admission in evidence
of four letters written to Hess by Lucas. The first two
speak of "our case," and mention matters in connection with
2. EVIDENCE:    it, but have little or no bearing on the issues
   letters.     tried. These could not have worked prejudice.
In that of October 16, 1899, he proposed to sell his interest
in the case, adding: "I would like to sell out as I have not
the money to fight them or pay what is due on the case now."
This was inconsistent with the claim that plaintiff was to pay
all costs and expenses, and for that reason the letter was
rightfully received in evidence. The letter of February 12,
1901, was written after the payment of the judgment, and
says: "I would not think of trying to make a settlement un-
til I get this all settled for you have shown me that any time
you get the best of it you will let me sweat. You speak of
the depositions at great expense. Yes and I paid for them at
that time. I think the only thing under the circumstances is
for you to set still and let me settle this to suit myself.
Jake." This impliedly conceded the duty of settling with
Hess, but insisted upon him remaining quiet until he had ad-
justed the suit. It was admissible.

III. When in Des Moines, at one time, the parties en-
tered into a contract of settlement on condition that the claim
should be compromised with the railroad company. Plaintiff
3.. EVIDENCE    was allowed to testify to the conversation lead-
   stricken out.  ing up to this agreement, and it was offered in
evidence; the objection thereto being overruled. Whether
anything beyond a mere offer was done, is not disclosed. See
*State Bank of Tabor v. Brewster,* 100 Iowa, 576. In any
event, all this was withdrawn from the jury, for the court

at one time thereafter ruled "testimony in regard to the set-
tlement stricken out," and at another said, "What transpired
at Des Moines is stricken out." In this state of the record,
it cannot be said that the agreement was before the jury.

IV. In the fifth instruction the court advised the jury
that, though Lucas claimed Hess had violated his contract,
yet, as he had taken no steps to rescind it, the contract
4. INSTRUC-          actually made was still in force, and binding
TIONS: when
not prejudicial on the parties. Also, an instruction to the effect
that if the agreement was as defendant claimed, and plaintiff
had not advanced any of the costs and expenses he could not
recover, was requested and refused. It is probably true, as
contended by appellant, that no issue as to recission was
raised by the pleadings or evidence, and that the proper ques-
tion for the jury's determination was whether the plaintiff
had so performed his part of the contract as to entitle him
to recover on the alleged breach of defendant. But the errors,
if any be conceded, in giving and refusing the instructions re-
ferred to, were without prejudice, for the jury especially
found the contract to have been as contended by plaintiff.
After explaining his computation, the court, as part of the
tenth instruction, said: "So, now, Hess is entitled in this
case to recover one of the following sums on this count, to-
wit: $797.80, which you will allow if you find that Hess
was to pay only one-half the costs, and also that he paid $28
costs, as claimed. $772.90 if you find Hess was to pay only
one-half the cost, but you do not find he paid the $28.
$596.20, which will be allowed in case you find that Hess
should pay all expenses, and you will find that he paid the
$28; or $571.35, which will be allowed if Hess must pay all
costs, and you do not find that he paid the $28 claimed.
Whatever amount you find Hess entitled to under this count,
you will also allow him six per cent. interest thereon from
February 4, 1901." To a special interrogatory, the jury
answered that it found Hess entitled to recover $860, as his
share of the judgment against the railroad company. As
the trial occurred May 22, 1902, the jury must have allowed

the $797.80, which, with interest, would make this sum, and therefore have found that the agreement was not only as contended by Hess, but that $28 was advanced to Lucas for expenses in carrying on the litigation against the company. Aside from this, he had paid out $7.50 in obtaining a pedigree to be used on the trial, and $4.63 for taking his deposition. This would be conclusive as to plaintiff at least advancing one-half of the expenses, aside from attorney's fees, and these were paid so near the day the judgment was collected as to have no bearing on the case.

V. The third instruction is criticised for saying that Hess claimed the costs and expenses were to be deducted from the amount recovered from the company, and the balance equally divided. But this is the effect of Hess' claim, concisely stated. He testified: "We agreed we should bring a suit and meet the necessary expenses that might be, and, in case of getting a judgment, we would deduct all the expenses and divide the net result between us. We talked over the expenses and attorney's fees and costs. We were to divide them. We were to pay them as they came up, along, and they were to be taken up. I mean, C. S. Lucas and myself. I was to pay half of it." And contrary to appellant's contention, it is in harmony with the allegations of the petition, in which it is said the contract provided "that, after deducting the expenses of said litigation, the amount received to be divided equally between plaintiff and defendant herein." Other instructions are criticised for proceeding on the theory that, under the agreement as claimed by plaintiff, each was to pay one-half the costs and expenses, whereas the petition alleged that "each was to contribute to the expense of litigation." True, the exact amount of the contribution was not averred, but, as this was indicated in plaintiff's testimony, which was not contradictory of the allegations of the petition, it was entirely correct to instruct as the court did.

5. Instructions.

The errors, if any, in the record, appear to have been without prejudice, and the judgment is AFFIRMED.